ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| FIRSTBANK PUERTO RICO, Recurrida, v. **IBIS GISELA RULLÁN RODRÍGUEZ**, por sí y en representación de la sociedad legal de gananciales compuesta con MARIO EMMANUELLI GALARZA; MARIO EMMANUELLI GALARZA, por sí y en representación de la sociedad legal de gananciales compuesta con IBIS GISELA RULLÁN RODRÍGUEZ, Peticionaria. | KLCE202401224 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce. Civil núm.: PO2019CV01308. Sobre: ejecución de hipoteca, cobro de dinero. |

Panel integrado por su presidente, el juez Bermúdez Torres, la jueza Rivera Marchand y la jueza Romero García.

Romero García, jueza ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 19 de diciembre de 2024.

Comparece la parte peticionaria, señora Ibis Gisela Rullán Rodríguez (señora Rullán), por sí y en representación de la sociedad legal de bienes gananciales compuesta por ella y el señor Mario Emmanuelli Galarza (esposos Rullán-Emmanuelli), y nos solicita que revoquemos la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 10 de octubre de 2024, notificada al día siguiente. Mediante la misma, el foro primario denegó la *Moción en reconsideración, moción urgente, solicitud expedita de paralización de ejecución de sentencia por pago total de deuda no informado al tribunal* presentada por la señora Rullán el 9 de octubre de 2024.

---

[1] Por virtud de la Orden Administrativa Núm. OATA-2024-124, emitida el 13 de noviembre de 2024, se designó a la Hon. Monsita Rivera Marchand para entender y votar en este recurso, en sustitución de la Hon. Gina Méndez Miró, por esta última haber renunciado.

En síntesis, la controversia ante nos gira en torno a una reclamación incoada por el Banco Santander Puerto Rico (hoy, FirstBank de Puerto Rico)[2], quien reclamó el pago de un **préstamo comercial** concedido a la parte peticionaria hace más de dos décadas. Advenida final y firme la **sentencia por estipulación** dictada en el caso, la peticionaria pretende que dejemos sin efecto la misma.

Examinada la petición de *certiorari* presentada el 12 de noviembre de 2024, así como la oposición a la expedición del auto presentada por la parte recurrida, FirstBank de Puerto Rico, el 11 de diciembre de 2024, **denegamos la expedición del auto**.

I

El caso ante nuestra consideración se remonta a una reclamación en cobro de dinero incoada en el 2019. Inicialmente, Banco Santander Puerto Rico, en adelante, FirstBank de Puerto Rico (FirstBank), presentó una *Demanda* en cobro de dinero y ejecución de prenda e hipoteca contra los esposos Rullán-Emmanuelli[3].

En síntesis, y a modo de trasfondo procesal, nos remontamos al 26 de diciembre de 2003, fecha en la que los esposos Rullán-Emmanuelli suscribieron un préstamo a término, **de tipo comercial**, por la suma principal de $315,000.00, el cual devengaría intereses a razón de 1.5% sobre la tasa preferencial[4]. Como garantía hipotecaria, los esposos Rullán-Emmanuelli gravaron una propiedad que ubica en el Municipio de Guayanilla, según inscrita en el Registro de la Propiedad y descrita a continuación:

> ---URBANA: Predio de terreno con cabida superficial de 3.09 cuerdas, más o menos, equivalentes a 1 hectárea, 53 áreas y 28 centiáreas que radica en el Barrio Jaguas Tuna del término municipal de Guayanilla, Puerto Rico. En lindes por el NORTE, con Don Pedro Castillo; por el SUR Don Antonio

---

[2] *Véase*, apéndice de la oposición, a las págs. 36-38. El 16 de septiembre de 2021, Banco Santander Puerto Rico presentó la *Solicitud de sustitución de parte demandante*. Informó que, en virtud de una fusión, la parte demandante sería, en adelante, FirstBank Puerto Rico.

[3] *Íd.*, a las págs. 1-5. La demanda fue presentada el 17 de abril de 2019. En el *Sistema Unificado de Manejo y Administración de Casos* (SUMAC), entrada 1, aparece registrada el 18 de abril de 2019.

[4] *Íd.*, a las págs. 1-2.

González, antes, hoy Don Ismael González y con Doña Nicolasa Collazo, antes, hoy con Don Antonio González; por el ESTE, con la Carretera Estatal 132 y Pedro Castillo; y por el OESTE, con parcela de Antonio Vega y Sucesión de Mario Francheschini. -------------------------------------------------------

---Consta inscrita al Folio Ciento Uno (101) del Tomo Doscientos Siete (207) de Guayanilla, Registro de la Propiedad de Puerto Rico, Sección Segunda (II) de Ponce, Finca Número Dos Mil Ciento Once (2,111).-----------------------

*Dirección física: Bo. Jaguas, Carr. 132 Km. 2.5, Guayanilla, Puerto Rico 00656.*

(Bastardillas en el original).

Ante el incumplimiento con lo pactado, Banco Santander presentó una demanda de ejecución de prenda e hipoteca y de cobro de dinero en contra de los esposos Rullán-Emmanuelli el 17 de abril de 2019[5]. En su demanda, el Banco relató los múltiples esfuerzos realizados desde el 2005 para encaminar un acuerdo de pago entre las partes, lo cual incluyó una reclamación judicial instada en contra del matrimonio en el 2009[6].

Luego de varios incidentes procesales, que incluyeron señalamientos de juicio en su fondo y dos recursos instados por los esposos Rullán-Emmanuelli ante este Tribunal de Apelaciones, las partes llegaron a un acuerdo transaccional[7]. Nos explicamos.

El **16 de agosto de 2023**, y previo a comenzar el juicio en su fondo, la institución bancaria desglosó el **balance de cancelación** del préstamo como sigue: $17,033.75 de principal, $6,066.03 de intereses y $2,251.84 de recargos, para un total de **$25,351.62**. FirstBank otorgaría a los esposos un **término de 90 días, computado a partir del 16 de agosto de 2023**, para saldar ese total. Respecto al potencial incumplimiento con el término de 90 días, el Banco consignó:

[…] De no saldarse en o antes de ese término, la parte demandante solicitaría la ejecución de la Sentencia mediante

---

[5] *Véase*, apéndice de la oposición, a las págs. 1-5.

[6] Entre los trámites procesales previos a la presentación de la demanda en este caso, el Banco destacó una *Sentencia por Estipulación* dictada en el caso civil núm. J CD2009-0254, en el que se suscribió un *Acuerdo de Pago de Sentencia* con respecto a este mismo préstamo hipotecario.

[7] *Véase*, SUMAC, entradas 66 y 122. Los esposos presentaron dos recursos de *certiorari* ante este Tribunal de Apelaciones. La expedición de ambos autos, con identificadores alfanuméricos KLCE202101398 y KLCE202201390, fueron denegados. Véase, también, apéndice de la oposición, a las págs. 83-92, y 145-152, respectivamente.

la totalidad de la deuda incluyendo lo que no se le está incluyendo que es la cláusula penal (honorarios de abogados) que son $31,500.00 reclamados en la demanda y en el informe. […].[8]

**El acuerdo transaccional fue vertido para el récord; se tomó juramento a los esposos Rullán-Emmanuelli, quienes fueron interrogados por su abogado y consintieron a sus términos**. Por su parte, el tribunal concedió a las partes litigantes un término de 10 días para presentar el acuerdo por escrito y así poder dictar la sentencia de conformidad.

Luego de varios atrasos en la presentación del escrito transaccional, este fue presentado finalmente el 26 de octubre de 2023. Intitulado *Acuerdo transaccional y relevo general*, el documento aparece como acordado y aceptado entre los representantes legales de las partes litigantes[9].

El **30 de octubre de 2023**, el foro primario emitió la *Sentencia* en la que impartió su aprobación al acuerdo, lo adoptó e hizo formar parte de la misma. La redacción de la cláusula dedicada al desglose de los balances y condiciones de pago lee como sigue:

> 3. A cambio del pago total de lo debido al 16 de agosto de 2023 (*fecha de comienzo del Juicio*) ascendente a **$25,351.62** *($17,033.75 de principal, $6,066.03 de intereses y $2,251.84 de cargos por demora*) <u>en o antes del 14 de noviembre de 2023</u> (90 días), la parte demandante acuerda darse por resarcida absolutamente y totalmente de todas sus reclamaciones en esta contienda judicial, a lo cual no se opone la parte demandada, y la parte demandada, recíprocamente, por el monto condonado de intereses prospectivos (*$202.50*) más los gastos legales reclamados ($31,500.00), acuerda darse por resarcida absolutamente y totalmente de todas sus reclamaciones en el presente caso, a lo cual no se opone la parte demandante.

(Bastardillas, negrillas y subrayado en el original).

---

[8] *Véase*, SUMAC, entradas 137 y 139. Véase, además, el apéndice de la oposición, a las págs. 154-155. Se trata de la *Minuta* de la vista del 16 de agosto de 2023, y de la misma *Minuta* enmendada.

[9] *Véase*, SUMAC, entrada 143.

Además, el tribunal apercibió a los esposos Rullán-Emmanuelli de la aplicación de medidas y procedimientos en caso de incumplimiento[10]. La *Sentencia* fue notificada el **6 de noviembre de 2023**.

Transcurrido el 14 de noviembre sin que mediara el pago acordado, el 16 de noviembre de 2023, FirstBank solicitó la ejecución de la sentencia[11]. Es decir, solicitó la ejecución de la garantía prendaria hipotecaria, y el pago del balance de la deuda monetaria ascendente a **$57,054.12**, cuyo desglose responde a las siguientes cantidades: $25,351.62 negociado, más $202.50 de intereses acumulados durante el periodo de indulgencia, más $31,500.00 en concepto de gastos legales[12].

El 26 de noviembre de 2023, los esposos Rullán-Emmanuelli presentaron su oposición a la ejecución[13].

A raíz de esa oposición, el foro primario señaló una vista argumentativa, que se celebró el **31 de enero de 2024**. En ella, la misma jueza que había presidido la vista del 16 de agosto de 2023, y ante la controversia generada por los esposos Rullán-Emmanuelli sobre la fecha de efectividad del acuerdo y de su cláusula penal, escuchó la grabación del 16 de agosto, e hizo constar que había quedado meridianamente claro que la fecha de comienzo del cómputo de los 90 días era el 16 de agosto de 2024, y que la ejecución del acuerdo no estuvo condicionada a la firma y presentación del mismo[14].

Así las cosas, y el mismo día de la vista, el Tribunal de Primera Instancia declaró sin lugar la oposición de los esposos Rullán-Emmanuelli y con lugar la solicitud de ejecución de sentencia. También, el foro primario

---

[10] *Véase*, SUMAC, entrada 145, que corresponde a la *Sentencia* junto al *Acuerdo Transaccional y Relevo General*. Véase, además, apéndice del recurso, a las págs. 2-5.

[11] *Véase*, SUMAC, entrada 146. Véase, además, apéndice de la oposición, a las págs. 159-160.

[12] Mediante *Orden* emitida el 22 de noviembre de 2023, el tribunal otorgó 10 días a FirstBank para aclarar si los esposos habían cumplido o no con el pago estipulado, puesto que, en la redacción de la *Moción de Ejecución de Sentencia*, el Banco indicó que sí habían cumplido. El 22 de noviembre de 2024, el Banco presentó su *Moción en cumplimiento de orden* y subrayó que la pareja "**no cumplió** con el pago estipulado." (Énfasis en el original). *Véase*, SUMAC, entradas 146-148.

[13] *Véase*, apéndice de la oposición, a las págs. 163-169.

[14] *Íd.*, a las págs. 178-179.

dictó el mandamiento de ejecución de sentencia. Ambas determinaciones fueron notificadas el 5 de febrero de 2024[15].

Transcurridos más de 6 meses, el **21 de agosto de 2024**, los esposos Rullán-Emmanuelli presentaron una *Moción Informativa*, suscrita únicamente por la señora Rullán, en la que impugnaban las cantidades adeudadas comunicadas durante el proceso. Suplicó al tribunal que le relevara de la sentencia, conforme a lo dispuesto en la Regla 49.2 de las de Procedimiento Civil, 32 LPRA Ap. V, pues sostuvo que el acuerdo transaccional había sido presentado ante el tribunal sin su consentimiento.

Subsiguientemente, el **28 de agosto de 2024**, la señora Rullán presentó una *Moción para retirar el acuerdo transaccional y relevo general*[16]. En esencia, la señora Rullán sostuvo que el acuerdo transaccional había sido firmado por los abogados de ambas partes, sin su aprobación ni la de su esposo. Insistió en que no había mediado su consentimiento.

El **10 de septiembre de 2024**, FirstBank presentó su oposición a las pretensiones de los esposos Rullán-Emmanuelli. Adujo que el acuerdo transaccional fue aceptado voluntariamente por los esposos, y avalado mediante la sentencia por estipulación, la cual, conforme había sido estipulado por las partes litigantes, había advenido final, firme e inapelable el 30 de octubre de 2023.

El **19 de septiembre de 2024**, la señora Rullán presentó su réplica[17].

El **24 de septiembre de 2024**, el foro primario emitió una *Resolución* en la declaró sin lugar la *Moción para retirar el acuerdo transaccional y relevo general* y con lugar la oposición de FirstBank. Esta determinación fue notificada el 27 de septiembre de 2024.[18]

---

[15] *Véase*, SUMAC, entradas 175 y 176. Véase, además, apéndice del recurso, a las págs. 6-7.

[16] *Véase*, SUMAC, entrada 203.

[17] *Véase*, apéndice del recurso, a las págs. 11-14. Véase, además, SUMAC, entrada 210.

[18] *Véase*, apéndice del recurso, a las págs.15-16.

El mismo **24 de septiembre de 2024**, notificada el 27, el foro recurrido emitió otra *Resolución* y dispuso: "No ha lugar. Aténgase a lo dispuesto por este Tribunal."[19]; ello, en respuesta a la moción por derecho propio presentada por la señora Rullán.

El **9 de octubre de 2024**, la señora Rullán compareció por derecho propio y solicitó la paralización de la ejecución de la sentencia[20]. Nuevamente, invocó lo dispuesto en la Regla 49.2 de las de Procedimiento Civil, 32 LPRA Ap. V. En apoyo a su solicitud, la señora Rullán adjuntó un correo electrónico que el señor Emmanuelli Galarza había recibido el 16 de febrero de 2024. La comunicación exponía una conversación entre su abogado y el abogado de FirstBank. Allí, el representante legal del Banco le comunicaba al abogado de los esposos que el balance de cancelación, al viernes, 23 de febrero de 2024, era de $57,644.28[21]. También, el Banco le instruía a realizar el pago mediante un cheque certificado o de gerente, pagadero a favor de FirstBank Puerto Rico. La señora Rullán adujo en su moción que había realizado el pago, según instruida, el 29 de febrero de 2024[22]. También, indicó que había corroborado que el cheque fue cobrado el 4 de marzo de 2024.

El **10 de octubre de 2024**, el foro primario emitió la *Orden* recurrida, en la que dispuso: "Nada que proveer. La parte demandada tiene representación legal".[23]

---

[19] *Véase*, apéndice del recurso, a las págs.17-18.

[20] *Íd.*, a las págs.19-29. El escrito presentado, intitulado *Moción en reconsideración, moción urgente, solicitud expedita de paralización de ejecución de sentencia por pago total de deuda no informado al tribunal*, no muestra la fecha de presentación; no obstante, aparece registrado en SUMAC el 9 de octubre de 2024.

[21] *Íd.*, a la pág. 8. Según el correo electrónico, la deuda se desglosaba de la siguiente manera:

Principal:              $ 17,033.75
Intereses:             $ 6,833.14
Cargos por Demora:      $ 2,277.39
Gastos Legales:         $ 31,500.00
Total Adeudado:         **$ 57,644.28**

[22] *Véase*, apéndice del recurso, a la pág. 32.

[23] *Íd.*, a la pág. 1. Apuntamos que, durante la etapa del procedimiento judicial que nos concierne, y hasta la presentación de este recurso, los esposos Rullán-Emmanuelli siempre contaron con representación legal. Esta consistió de cuatro abogados distintos y consecutivos.

Inconforme, la señora Rullán incoó este recurso de *certiorari* el **12 de noviembre de 2024**, y planteó el siguiente error:

> Erró el TPI en no acoger la moción de reconsideración, aunque fuese al único efecto de reconocer cumplida la sentencia y dejar sin efecto la orden de ejecución de la misma.

(Énfasis omitido).

El **11 de diciembre de 2024**, FirstBank presentó su oposición a la expedición del recurso. Sostuvo que al matrimonio no le asistía el remedio de relevo de sentencia peticionado. Insistió en su presentación tardía y en la improcedencia de un remedio al amparo de la Regla 49.2 de las de Procedimiento Civil, 32 LPRA Ap. V.

Adicionalmente, FirstBank adjuntó a su apéndice varias mociones pertinentes, que habían sido omitidas del apéndice del recurso. **Más importante aún, acreditó que el Banco había aceptado el pago realizado por la señora Rullán el 29 de febrero de 2024, y que había liberado a los esposos Rullán-Emmanuelli de la deuda y les había hecho entrega de la garantía prendaria hipotecaria, por lo que la sentencia había sido satisfecha**.

Evaluados los argumentos de las partes litigantes, denegamos la expedición de este recurso.

II

A

Distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. Véase, *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así pues, el *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

Ahora bien, la discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal

establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

   A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

   B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

   C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

   D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

   E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

   F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

   G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B.

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción, o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service,* 117 DPR 729, 745 (1986). Lo anterior le impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro primario. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

III

Examinada la petición de *certiorari*, la oposición a su expedición, así como el trámite procesal de este caso, es evidente que lo que solicita la señora Rullán es que se deje sin efecto lo acordado libre y voluntariamente, y bajo juramento, en la vista del 16 de agosto de 2023, y se le exima de pagar lo acordado en cuanto al pago adicional que tenía que satisfacer al Banco de exceder el término de 90 días estipulado.

Constatadas las acciones y determinaciones tomadas por el foro primario en este caso, no podemos concluir que dicho foro hubiera incurrido en un abuso de discreción o que hubiera actuado con el prejuicio o la parcialidad, que conlleve un fracaso de la justicia. Además, concluimos que la parte peticionaria no pudo demostrar que, intervenir en esta etapa, evitaría un perjuicio sustancial.

IV

A la luz de lo antes expuesto, este Tribunal deniega la expedición del auto de *certiorari*.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones